**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| ELECTRONIC PRIVACY INFORMATION CENTER, on behalf of itself, its members and the general public<br>1718 Connecticut Ave, N.W.<br>Suite 200<br>Washington, D.C. 20009<br><br>    Plaintiff,<br><br>  v.<br><br>ACCUWEATHER INTERNATIONAL, INC.<br>385 Science Park Road<br>State College, PA 16803<br><br>    Defendant. | Case No.: 1:18-cv-01062<br><br><br>**NOTICE OF REMOVAL** |

Defendant AccuWeather International, LLC (AccuWeather), incorrectly named AccuWeather International, Inc., hereby removes this civil action from the Superior Court for the District of Columbia to the United States District Court for the District of Columbia.  This Court has original jurisdiction over this action pursuant to the diversity jurisdiction statute or the Class Action Fairness Act (CAFA).  28 U.S.C. § 1332(a), (d).

**PROCEDURAL HISTORY**

1.  On March 16, 2018, Plaintiff Electronic Privacy Information Center (EPIC) filed this action, Case Number 2018 CA 001870 B, in the Superior Court for the District of Columbia. A true and correct copy of the complaint is attached hereto as Exhibit 1.

2.  EPIC alleges that AccuWeather violated the District of Columbia's Consumer Protection Procedures Act (CPPA), D.C. Code § 28-3904, et seq.  AccuWeather offers a weather

application (app) for use on consumers' electronic devices using an iOS platform, including iPhones, iPads, and Apple Watches, among others.  EPIC alleges that when a consumer downloads AccuWeather's app to their mobile device, AccuWeather gains the ability to track the device's location by either tracking its Basic Service Set Identifier (BSSID) or by using Apple's "Application Programming Interface."  Ex. 1, ¶¶ 22–54.  EPIC further alleges that AccuWeather violated the CPPA by (1) prior to August 2017, collecting and disclosing app users' location data to third-party marketers without notification and, in some instances, despite AccuWeather's representation that it would not do so; and (2) after August 2017, failing to disclose that AccuWeather collected and disclosed app users' location data whenever a user selected the "While Using the App" option when asked whether AccuWeather could access that data.  *Id.*, ¶¶ 55–95.

3.    EPIC brings this action pursuant to D.C. Code §§ 28-3905(k)(1)(C) and (k)(1)(D)(i). *Id*., ¶¶ 20, 121–123.

4.    EPIC's complaint contains two counts.  Count One alleges that AccuWeather made materially misleading statements in violation of the CPPA, D.C. Code § 28-3904(e).  Ex. 1, ¶¶ 124–134.  Count Two alleges that AccuWeather omitted material information in violation of the CPPA, D.C. Code § 28-3904(f).  *Id.*, ¶¶ 135–143.

5.    Plaintiff EPIC seeks relief under the CPPA, including:  (1) an injunction against AccuWeather's allegedly unlawful conduct;  (2) disgorgement of "all earnings, profits, compensation, and benefits received by AccuWeather as a result of its conduct found to be in violation of the DC CPPA";  (3) Restitution of "all earnings, profits, compensation, and benefits received by AccuWeather as a result of its conduct found to be in violation of the DC CPPA";  (4) statutory damages "for EPIC individually";  (5) punitive damages; and (6) attorney fees at the "maximum rate allowable by law."  Ex. 1, at 31.  EPIC's complaint does not demand a specific amount of monetary damages.  *See id*.

6.      On April 4, 2018, EPIC served a copy of the information sheet, summons,

complaint, and initial order and addendum containing the case assignment and date of initial

conference on AccuWeather by email.  A true and correct copy of the information sheet is attached

hereto as Exhibit 2.  A true and correct copy of the summons is attached hereto as Exhibit 3.  A true

and correct copy of the initial order and addendum is attached hereto as Exhibit 4.  On April 24,

2018, EPIC served a copy of its corporate disclosure pursuant to D.C. Superior Court rules.  A true

and correct copy of EPIC's corporate disclosure is attached hereto as Exhibit 5.  EPIC also served

its first set of interrogatories and its first request for production.  True and correct copies of EPIC's

first set of interrogatories and first request for production are attached hereto as Exhibits 6 and 7,

respectively.  Exhibits 1–7 constitute all of the process, pleadings, and orders served on

AccuWeather in this case, and are attached hereto pursuant to 28 U.S.C. § 1446(a).

## PARTIES

7.      Defendant AccuWeather International, LLC, incorrectly named as AccuWeather

International, Inc., is headquartered in State College, Pennsylvania and incorporated under

Delaware law.

8.      Plaintiff EPIC is a 501(c)(3) non-profit organization, incorporated in the District of

Columbia.  Ex. 1, ¶ 16.  EPIC also maintains its headquarters in Washington, D.C.[1]

## TIMELINESS OF REMOVAL

9.      EPIC served its complaint on AccuWeather on April 4, 2018.  This notice is

therefore timely pursuant to 28 U.S.C. § 1446(b) and Rule 6(a) of the Federal Rules of Civil

Procedure.

## BASIS FOR REMOVAL

10.      This Court has either diversity jurisdiction or CAFA jurisdiction over this action.

_____

[1] ELECTRONIC PRIVACY INFO. CTR., https://epic.org (last visited Apr 30, 2018).

11.     There are no other defendants who are required to join in or consent to removal pursuant to 28 U.S.C. § 1446(b)(2)(a).

12.     This Court is the United States District Court that embraces the District of Columbia, where the action is pending.  *See* 28 U.S.C. §§ 88, 1441(a).

## I.     Diversity Jurisdiction

13.     If EPIC brought this action as an individual action, it is properly removed to this Court under 28 U.S.C. §§ 1332(a) and 1441 as an individual action between "citizens of different states" where the complaint places more than $75,000 in controversy.

14.     The parties are completely diverse.  28 U.S.C. § 1332(a)(1).  Plaintiff EPIC is headquartered and incorporated in the District of Columbia.  Ex. 1, ¶ 16; 28 U.S.C. § 1332(c).[2] Defendant AccuWeather is headquartered in Pennsylvania and incorporated in Delaware.  Ex. 1, ¶ 19; 28 U.S.C. § 1332(c).

15.     The amount in controversy exceeds the "sum or value of $75,000, exclusive of interest and costs."  28 U.S.C. § 1332(a).  Although EPIC declined to make a specific monetary demand in its complaint, EPIC seeks "disgorgement and restitution of all earnings, profits, compensation, and benefits received by AccuWeather as a result of its conduct found to be in violation of the DC CPPA."  Ex. 1, at 31.

16.     EPIC alleges that AccuWeather violated the CPPA by:

a.     Prior to August 2017, failing to disclose that (1) AccuWeather collected app users' Basic Service Set Identifier (BSSID) data, and (2) shared app users' BSSID data with third-party marketers.  *Id.*, ¶¶ 72–79.  According to EPIC, AccuWeather failed to disclose this information every time a consumer downloaded and then opened the app.  *Id.*

---

[2] ELECTRONIC PRIVACY INFO. CTR., https://epic.org (last visited Apr 30, 2018).

     b.      Since August 2017, failing to disclose that AccuWeather collects and shares app

users' location data after users select the "While Using the App" option when

asked whether AccuWeather could access that data.  *Id.*, ¶ 55.

17.      EPIC claims that AccuWeather benefited from these alleged CPPA violations in the

following ways:

     a.      Advertising sales generate "enormous revenues" for mobile apps like

AccuWeather.  Ex. 1, ¶ 22.

     b.      Prior to August 2017, AccuWeather used Reveal Mobile Inc.'s "Data

Monetization services," which allowed AccuWeather to sell its customers' data

to third parties.  *Id.*, ¶¶ 108–110 (internal quotations omitted).

     c.      AccuWeather sells advertising on exchanges that use location data, including

"Double Click for Publishers" and "Nexage."  *Id.*, ¶ 104.

18.      Based on these allegations, EPIC seeks to disgorge AccuWeather of "all" profits,

earnings, compensation, and benefits from in-app D.C. advertisements prior to August 2017, as

well as a substantial portion of profits from in-app D.C. advertisements since August 2017.  *Id.*, ¶

3.  Claims for disgorgement are not subject to the non-aggregation principle: "Because of their

indivisible nature, claims for disgorgement are integrated claims that can be aggregated in order to

determine the amount in controversy."  *Zuckman v. Monster Beverage Corp.*, 958 F. Supp. 2d 293,

303 (D.D.C. 2013).

19.      In addition, the amount in controversy includes (1) statutory damages of "treble

damages or $1,500 per violation, whichever is greater," D.C. Code § 28-3905 (k)(2)(A); (2)

punitive damages; (3) attorney fees at the "maximum rate allowable by law"; and (4) the cost of

injunctive relief from AccuWeather's perspective. Ex. 1, at 31.  Although there does not seem to

be binding D.C. Circuit case law on the point, some D.C. district courts have held that in CPPA

cases brought for the general public, pursuant to D.C. Code (k)(1)(C), "only the damages to which

[a plaintiff] would be personally entitled—rather than those on behalf of the public—will count toward satisfying the $75,000 jurisdictional threshold." *Zuckman v. Monster Beverage Corp.*, 958 F. Supp. 2d 293, 297–98 (D.D.C. 2013).

20.     EPIC also seeks punitive damages for AccuWeather's alleged CPPA violations.  Ex. 1, at 31.  "Punitive damages may generally be included when calculating the amount in controversy under 28 U.S.C. § 1332(a)."  *Wexler v. United Air Lines, Inc.*, 496 F. Supp. 2d 150, 154 (D.D.C. 2007).  D.C. federal courts have held that the non-aggregation principle "bars the aggregation of punitive damages claims absent a prior determination that the underlying claim—the basis on which such damages are sought—asserts a single title or right."  *Breakman v. AOL LLC*, 545 F. Supp. 2d 96, 106 (D.D.C. 2008) (quotations and citations omitted).  Here, EPIC makes a claim for, *inter alia*, disgorgement, which constitutes a single right.  *Nat'l Consumers League v. Flowers Bakeries, LLC.*, 36 F. Supp. 3d 26, 32 n.3 (D.D.C. 2014) ("[Disgorgement] is taken directly from defendant to a common fund and is therefore considered a common and undivided interest.").  Therefore, punitive damages may be aggregated for purposes of determining the amount in controversy.

21.     EPIC also seeks injunctive relief against AccuWeather, "including that [it] cease collecting from any mobile device any data that can be used to identify a consumer's location without providing clear and prominent notice to the consumer and obtaining the consumer's express, affirmative opt-in consent."  Ex. 1, ¶¶ 134, 143; *see* D.C. Code § 28-3905(k)(2) (authorizing injunctive relief).  "Generally, the value of injunctive relief for determining the amount in controversy can be calculated as the cost to the defendant."  *Nat'l Consumers League v. Bimbo Bakeries USA*, 46 F. Supp. 3d 64, 74 (D.D.C. 2014) (quotations and citations omitted).  Assuming for purposes of argument that AccuWeather's current conduct is held violative of the CPPA as EPIC alleges, then the injunctive relief sought would require AccuWeather to use

additional technical or organizational measures.  On information and belief, the costs to

AccuWeather of complying with EPIC's requested relief would exceed $75,000 on its own.

22.     EPIC seeks attorney fees at the "maximum rate allowable by law."  Ex. 1, at 31.

"Attorney fees are part of the amount in controversy if they are provided for by statute or contract."

*Zuckman*, 958 F. Supp. 2d at 301.  The CPPA provides such fees.  D.C. Code § 28-3905 (k)(2)(B).

Applying the CPPA, federal courts have calculated fee awards on an hourly basis using the *Laffey*

Index, a tool used by the U.S. Attorney's Office to calculate attorney fee requests.  *See, e.g.*, *Beck*

*v. Test Masters Educ. Servs., Inc.*, 73 F. Supp. 3d 12, 17 (D.D.C. 2014) (approving hourly rate

between $250 and $400 per hour for attorneys, and $60 per hour for paralegals and staff).  The U.S.

Attorney's Office maintains a current version of the *Laffey* Index.[3]  EPIC employs at least five

attorneys in this action.  Ex. 1, at 32.

    a.    Jonathan Nace, Esq. has been admitted to practice in Maryland since December 2007, and could charge $483 per hour under the *Laffey* Index.[4]

    b.    Christopher Nidel, Esq. has been admitted to practice in the District of Columbia since April 2006, and could charge $483 per hour under the *Laffey* Index.[5]

    c.    Marc Rotenberg, Esq. has been admitted to practice in the District of Columbia since February 1990, and could charge $562 per hour under the *Laffey* Index.[6]

---

[3] *USAO Attorney's Fees Matrix—2015–2018*, U.S. ATT'Y OFF., https://www.justice.gov/usao-dc/file/796471/download (last visited Apr 30, 2018).

[4] MARYLAND ATT'Y LISTING, https://mdcourts.gov/lawyers/attylist (search "Jonathan Nace").

[5] D.C. BAR, https://www.dcbar.org/index.cfm (follow "find a member," then search "Christopher Nidel").

[6] D.C. BAR, https://www.dcbar.org/index.cfm (follow "find a member," then search "Marc Rotenberg").

    d.      Alan Butler, Esq. has been admitted to practice in the District of Columbia since January 2013, and could charge $346 per hour under the *Laffey* Index.[7]

    e.      Samuel Lester, Esq. has been admitted to practice in the District of Columbia since December 2017, and could charge $302 per hour under the *Laffey* Index.[8]

## II.    CAFA Jurisdiction

23.    Alternatively, this case is properly removed to this Court under CAFA and pursuant to 28 U.S.C. §§ 1332, 1441, 1446 and 1453.  CAFA provides federal jurisdiction over class actions in which (1) "any member of a class of plaintiffs is a citizen of a State different from any defendant"; (2) the "number of members of all proposed plaintiff classes in the aggregate is [not] less than 100"; and (3) "the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs."  *See* 28 U.S.C. § 1332(d)(2), (d)(5)(B).  It defines "class actions" as "any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute . . . authorizing an action to be brought by 1 or more representative persons as a class action."  28 U.S.C. § 1332(d)(1)(B).

24.    EPIC invokes two CPPA provisions—D.C. Code §§ 28-3905(k)(1)(C) and (k)(1)(D)(i)—that are "similar" to the class action provisions of Federal Rule of Civil Procedure 23.  And, this action meets CAFA's other requirements.

### A.    EPIC asserts a putative class action.

25.    In its complaint, EPIC asserts that the D.C. Superior Court has jurisdiction over this action pursuant to the CPPA provision that allows a "public interest organization" to bring suit on behalf of a "class of consumers."  Ex. 1, ¶ 14 *citing* D.C. Code § 28-3905 (k)(1)(D)(i).  EPIC

---

[7] D.C. Bar, https://www.dcbar.org/index.cfm (follow "find a member," then search "Alan Butler").

[8] D.C. Bar, https://www.dcbar.org/index.cfm (follow "find a member," then search "Samuel Lester").

purports to meet the statutory definition of "public interest organization" and that it has a "strong nexus" to AccuWeather's consumers. Ex. 1, ¶¶ 16–17. Its status as a "public interest organization" only relates to the CPPA's class provision. That provision instructs courts to dismiss a public interest organization's action "if the court determines that the public interest organization does not have sufficient nexus to the interests involved of the consumer or class to adequately represent those interests." D.C. Code § 28-3905 (k)(1)(D)(ii). EPIC additionally invokes the CPPA's class provision in its complaint's "Causes of Action" section. Ex. 1, ¶ 122.

26.    EPIC also asserts that it brings this action "on behalf of the general public" under D.C. Code § 28-3905 (k)(1)(C). Ex. 1, ¶19. The D.C. Court of Appeals recently held that the D.C. Superior Court's rule on class actions governs CPPA suits brought "on behalf of the general public." *Rotunda v. Marriott Int'l, Inc.*, 123 A.3d 980, 982 (D.C. 2015) ("[W]e find no explicit statement of an intention by the Council of the District of Columbia to supplant with *ad hoc* procedures the framework long established by Rule 23 to govern representative suits in the Superior Court."). In the complaint, EPIC does not expressly forgo class certification.

27.    EPIC expressly seeks injunctive relief and attorney fees on behalf of the public. Ex. 1, ¶¶ 134, 143. EPIC's "Prayer for Relief" also seeks restitution and punitive damages on behalf of the public. *See id.*, at 31 (seeking statutory damages "for EPIC individually," but not similarly limiting its claim for restitution and punitive damages).

**B.    EPIC's putative class action meets CAFA's requirements.**

28.    The parties are minimally diverse for the reasons stated in paragraph 13; EPIC is a citizen of the District of Columbia, but AccuWeather is not. *See* 28 U.S.C. § 1332(d)(2)(A).

29.    The number of proposed plaintiffs is at least one hundred because at least that many people have downloaded AccuWeather's mobile application in the District of Columbia. As of

July 2017, the District of Columbia had a population of 693,972.[9]  AccuWeather is "one of the

world's largest weather media companies"; its weather app is available on iPhones, iPads, and

Apple Watches, among other mobile devices.  Ex. 1, ¶ 1.  According to EPIC, "almost everyone

carries a cell phone."  *Id*., ¶23.  AccuWeather's app is one of the three most popular weather apps

in Apple's App Store and over 263,000 Apple device users have reviewed it.[10]

30.     If the court determines that EPIC's complaint is a putative class action, the amount

in controversy exceeds $5,000,000.  Under CAFA, the claims of individual class members "shall

be aggregated" to determine the amount in controversy.  28 U.S.C. § 1332(d)(6).  This Court must

therefore aggregate the entire class's claims for relief as described in paragraphs 15 to 22,

including (1) statutory damages, treble damages or $1,500 per violation;  (2) punitive damages;  (3)

the cost of injunctive relief from AccuWeather's perspective;  and (4) attorney's fees.  On

information and belief, AccuWeather's app had been downloaded by users in the District of

Columbia more than 3,334 times, and thus the statutory damages exceed the amount in controversy

(3,334 violations x $1,500 = $5,001,000).  As explained in paragraphs 15 to 18, EPIC also seeks to

disgorge AccuWeather of "all earnings, profits, compensation and benefits" from in-app

advertisements that used location data of D.C. consumers.

**REMOVAL PROCEDURES**

31.     The recitation of the allegations and requests for relief above does not concede that

Plaintiff's allegations or legal theories have merit.  AccuWeather reserves the right to assert all

applicable defenses in this matter.

---

[9] *QuickFacts District of Columbia*, U.S. CENSUS BUREAU, https://www.census.gov/quickfacts/DC (last visited Apr 30, 2018).

[10] *AccuWeather: Weather Tracker*, APPLE INC., https://itunes.apple.com/us/app/accuweather-weather-tracker/id300048137?mt=8 (last visited Apr 30, 2018).

32.     As required by 28 U.S.C. § 1446(d), AccuWeather will promptly serve plaintiff

EPIC with a copy of this Notice of Removal and will file a copy of the same with the Superior

Court of the District of Columbia.

WHEREFORE, the case now pending in the Superior Court of the District of Columbia,

Case Number 2018 CA 001870 B, is hereby removed to the United States District Court pursuant

to 28 U.S.C. § 1441.

Dated:  May 4, 2018                              Respectfully Submitted,

                                                 /s/ Eric C. Bosset
                                                 Eric C. Bosset (D.C. Bar No. 414283)
                                                 COVINGTON & BURLING LLP
                                                 One CityCenter
                                                 850 Tenth Street, NW
                                                 Washington, DC 20001-4956
                                                 (202) 662-5606
                                                 ebosset@cov.com

                                                 *Counsel for Defendant*

11

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing Notice of Removal was sent via first-class mail, postage prepaid on this 4th day of May, 2018 to:

Marc Rotenberg, Esq., Bar No. 422825
Alan Jay Butler, Esq., Bar No. 1012128
Sam Lester, Esq., Bar No. 888241885
1718 Connecticut Ave., NW
Suite 200
Washington, DC 20009
rotenberg@epic.org
butler@epic.org
lester@epic.org
202-483-1148
*Counsel for Plaintiffs*


Jonathan B. Nace, Esq., Bar No. 985718
Christopher T. Nidel, Esq., Bar No. 497059
5335 Wisconsin Ave., NW
Suite 440
Washington, DC 20015
chris@nidellaw.com
jon@nidellaw.com
202-478-9677
*Counsel for Plaintiffs*


/s/Eric C. Bosset_____